# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset Back Certificates Series 2005-A8,<br><br>    Plaintiff,<br> vs.<br><br>BDJ INVESTMENTS, LLC, *et al.*,<br><br>    Defendants. | Case No.: 2:16-cv-00866-GMN-BNW<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 99), filed by Plaintiff U.S. Bank National Association ("Plaintiff"). Defendant BDJ Investments, LLC ("BDJ") filed a Response, (ECF No. 110), and Plaintiff filed a Reply, (ECF No. 99).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 101), filed by BDJ. Plaintiff filed a Response, (ECF No. 112), to which BDJ did not file a reply.

For the reasons discussed herein, Plaintiff's Motion for Summary Judgment is **GRANTED** and BDJ's Motion for Summary Judgment is **DENIED**.

## I.   BACKGROUND

This case arises from the non-judicial foreclosure on real property located at 10625 Colter Bay Court, Las Vegas, Nevada 89129 (the "Property"). (*See* Deed of Trust, ECF No. 100-3).[1] In 2005, Isam S. Halteh ("Borrower") purchased the Property by way of a loan in the amount of $255,400.00 secured by a deed of trust, identifying Mortgage Electronic Registration Systems ("MERS") as beneficiary. (*Id.*). Plaintiff later obtained an interest in the Property

---

[1] The Court grants Plaintiff's request for judicial notice, (ECF No. 100), as to the publicly recorded documents evidencing the foreclosure proceedings in this matter. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

through a series of assignments and is the current holder of the deed of trust. (*See* Assignments of Deed of Trust, ECF Nos. 100-6, 100-7).

On December 3, 2009, upon Borrower's failure to pay all amounts due, Absolute Collection Services, LLC ("ACS") recorded a notice of delinquent assessment lien on behalf of Lone Mountain Quartette Community Association ("HOA"). (First Notice of Lien, ECF No. 100-8). ACS subsequently recorded a notice of default and election to sell, as well as a notice of trustee's sale. (First Notice of Default, ECF No. 100-9); (First Notice of Sale, ECF No. 100-10).

ACS reinitiated foreclosure proceedings in April 2011, recording a second notice of delinquent assessment lien, followed by a notice of default. (Second Notice of Lien, ECF No. 100-13); (Second Notice of Default, ECF No. 100-14). On September 19, 2011, Bank of America, N.A. ("BANA"), Plaintiff's loan servicer at the time, sent ACS a letter requesting a statement of account for the Property. (*See* Accounting Request, Ex. 15 to Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 99-3). On September 29, 2011, ACS responded with a fax advising that a "9 month Statement of Account is not valid," until the deed of trust beneficiary forecloses on the Property. (ACS Response Letter, Ex. 16 to Pl.'s MSJ, ECF No. 99-4).

ACS, on HOA's behalf, proceeded with foreclosure, recording a renewed notice of trustee's sale and setting a sale date for January 17, 2012. (Second Notice of Sale, Ex. 17 to Pl.'s MSJ, ECF No. 99-5). The foreclosure sale ultimately took place on April 17, 2012, at which Defendant BDJ acquired the Property and recorded a trustee's deed upon sale evidencing its purchase. (Foreclosure Deed, Ex. 18 to Pl.'s MSJ, ECF No. 99-6).

Plaintiff filed its Amended Complaint in this action on April 22, 2019, bringing the following causes of action against BDJ and HOA arising from the foreclosure and subsequent sale of the Property: (1) quiet title with the requested remedy of declaratory relief; (2) injunctive relief; and (3) unjust enrichment. (*See* Am Compl. ¶¶ 54–86, ECF No. 95).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the

court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

### III.     DISCUSSION

Plaintiff moves for summary judgment on its quiet title claim, seeking a declaration that its first deed of trust remains a valid encumbrance on the Property. (Pl.'s MSJ 2:16–22, ECF No. 99). Plaintiff reasons that ACS's letter in response to BANA's request for the Property's payment history amounted to a rejection, thus excusing any obligation to tender the HOA superpriority lien amount. (*Id.* 2:24–3:1). Therefore, according to Plaintiff, BANA's attempted tender operated to cure the default with respect to HOA's superpriority lien. (*Id.* 10:8–18).

Alternatively, Plaintiff contends that the Property's grossly inadequate sales price, coupled with other irregularities in the foreclosure process, constitute evidence of fraud, oppression, and unfairness sufficient to warrant voiding the sale on equitable grounds. (*Id.* 10:21–13:12).

BDJ seeks summary judgment on Plaintiff's claims, arguing that Plaintiff lacks standing to bring a quiet title claim because Plaintiff has not demonstrated a valid assignment of the note and deed of trust in its favor. (BDJ's MSJ 8:3–11:21, ECF No. 101). BDJ further argues that BANA's letter of inquiry is insufficient to constitute valid tender because BANA merely offered to prospectively pay an undetermined amount. (*Id.* 11:23–12:5). Nor was BANA's obligation to tender the HOA superpriority lien excused, BDJ continues, because BANA was not entitled to rely upon the legal opinions of laypersons employed by ACS. (*Id.* 12:8–13:20). Finally, BDJ asserts that the foreclosure sale is presumed valid as a matter of law and, in any event, BDJ's status as a bona fide purchaser for value precludes Plaintiff from prevailing. (*Id.* 13:21–15:27).

The Court begins with the threshold issue of Plaintiff's standing to bring this action, followed by discussion of whether BANA was obligated to tender the HOA superpriority lien amount.[2]

**A. Standing**

BDJ argues that Plaintiff does not have standing to assert its interest in the deed of trust because it has not adduced evidence of the reunification of the note and deed of trust. (BDJ's MSJ 8:5–21). BDJ continues that Plaintiff failed to provide a validly endorsed note, establish the chain of ownership of the note and first deed of trust, or present the original writing indicating the deed of trust was transferred. (*Id.* 8:5–11:8). The Court disagrees.

---

[2] Neither party has moved for summary judgment on Plaintiff's unjust enrichment claim.

To begin, it is well established that a quiet title action may be advanced by "any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Plaintiff seeks a declaration as to the viability of its lien interest relative to BDJ's interest. BDJ appears to conflate Plaintiff's declaratory relief action with one for enforcement of the note and deed of trust through foreclosure. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 258 (Nev. 2012) ("[*T*]*o foreclose*, one must be able to enforce both the promissory note and the deed of trust.") (emphasis added).[3] As to the chain-of-title argument, BDJ offers no competing evidence to rebut Plaintiff's production of the deed of trust or the subsequent assignments by which Plaintiff gained all beneficial interest in the same. (Deed of Trust, ECF No. 100-3); (Assignments of Deed of Trust, ECF Nos. 100-6, 100-7). Accordingly, the Court rejects BDJ's argument that Plaintiff is without standing to bring the instant quiet title action.

The Court now turns to the parties' dispute concerning the legal impact of BANA's communications with ACS, and whether BANA's tender obligation was excused.

**B. Tender of the HOA Superpriority Lien**

As a general rule, a first deed of trust holder may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* NRS 116.31166(1); *see also SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "Valid tender requires payment in full," and must be either unconditional or limited to "conditions on which the tendering party has a right to insist." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 117–118 (Nev. 2018).

---

[3] While not required, Plaintiff has nevertheless attached a copy of the original promissory note, (Ex. 1 to Pl.'s Resp., ECF No. 112-1).

In *Jessup*, the Nevada Supreme Court introduced a narrow exception to the foregoing rule: a first deed of trust holder is excused from tendering the superpriority amount where an HOA agent represents that it would reject any such tender if attempted. *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217, 1220 (Nev. 2019). In that case, like the instant one, the deed of trust holder sent a letter requesting the amount of the HOA's superpriority lien. *Id.* at 1219–20. Citing the general rule, the Court held that a mere offer to pay the "yet-to-be-determined superpriority amount was not sufficient to constitute valid tender." *Id.* at 1220. Nevertheless, the Court held that tender was excused because the HOA's agent represented to the deed of trust holder that any attempted tender would be rejected.

Specifically, the HOA's agent, ACS, responded in writing to the lender's request for the payoff amount, stating "a 9-month statement of Account is not valid," until the lender—rather than HOA—initiates foreclosure. *Id.* While ACS's correspondence did not expressly state that tender would be rejected, the Nevada Supreme concluded this was "the only reasonable construction" of ACS's language. *Id.* Given the futility of tender, the Court found it immaterial that the deed of trust holder took no further action to preserve its deed of trust in the ten-month window between ACS's rejection and the foreclosure sale. *Id.* 1218–1219. Accordingly, the lender's offer to pay the "yet-to-be-determined superpriority amount," combined with "ACS's rejection of that offer, operated to cure the default as to [the superpriority] portion of the lien such that the ensuing foreclosure sale did not extinguish the first deed of trust." *Id.* at 1220.

Here, the facts of this case are materially indistinguishable from those before the *Jessup* Court. Following BANA's letter requesting the superpriority payoff amount, ACS responded in writing, stating:

> [I]t is our view that without the action of foreclosure, a 9 month Statement of account is not valid. At this time, I respectfully request that you submit the Trustees Deed Upon Sale showing your client's possession of the property and the date that it occurred. At

>           that time, we will provide a 9 month super priority lien Statement of
>           Account.

(ACS Response Letter, Ex. L to BDJ's MSJ, ECF No. 101). Pursuant to the Nevada Supreme Court's decision in *Jessup*, the only "reasonable construction" of this language is that ACS would reject BANA's superpriority tender. *See Jessup*, 435 P.3d at 1220.

According to BDJ, *Jessup* is inapplicable and BANA's tender obligation was not excused because unlike *Jessup*, Plaintiff has not put forth evidence that BANA relied upon ACS's representation. (BDJ's MSJ 12:26–13:2). To the extent BANA did rely upon ACS's letter, BDJ continues, such reliance was unjustified because ACS's representation to BANA constituted the "legal opinion of a layperson." (*Id.* 12:15–25). Both arguments are without merit.

With respect to BANA's reliance on ACS's letter, BDJ's argument is belied by the record in this case. Plaintiff attaches an affidavit of BANA's counsel at the time, who confirms that he interpreted ACS's letter as "representing that there was no superpriority lien amount due and owing at the time, because [BANA] had not yet foreclosed." (*See* Rock K. Jung Aff., Ex. 20 to Pl.'s MSJ, ECF No. 99-6). As for BANA's reliance on the opinion of a layperson, the same ACS agent who authored the letter before the *Jessup* Court, Kelly Mitchell, wrote the letter to BANA in the present case, which includes identical language. (*See* ACS Response Letter, ECF No. 101); *Jessup*, 435 P.3d at 12:18–19.

In sum, BANA's letter offering to pay, coupled with ACS's rejection, served to satisfy the default as to the HOA superpriority lien such that the sale did not extinguish the first deed of trust.[4] As a result, the first deed of trust, presently held by Plaintiff, survived the sale and continues to encumber the Property. While the foreclosure sale remains intact, BDJ's interest

---

[4] In light of this holding, the Court need not reach Plaintiff's remaining arguments concerning equitable grounds for setting aside the sale.

in the Property is subject to Plaintiff's deed of trust. Finally, because the HOA superpriority lien was satisfied prior to the sale and was cured by operation of law, BDJ cannot prevail even if the Court were to find it was a bona fide purchaser for value. *See Jessup*, 435 P.3d at 1221 n.5; *Bank of Am.*, 427 P.3d at 121 ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Based upon the foregoing, the Court grants summary judgment in favor of Plaintiff on its quiet title claim and denies BDJ's Motion as to the same.[5]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 99), is **GRANTED** consistent with the foregoing.

**IT IS FURTHER ORDERED** that BDJ's Motion for Summary Judgment, (ECF No. 101), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report within fourteen (14) days of this Order's issuance, informing the Court as to how they intend to proceed with respect to Plaintiff's unjust enrichment claim.

**DATED** this __26__ day of July, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[5] As for Plaintiff's prayer for injunctive relief pending the Court's determination of the parties' respective rights to the Property, the Court's grant of summary judgment in Plaintiff's favor moots this claim and is therefore dismissed.