# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset Back Certificates Series 2005-A8,<br><br>Plaintiff,<br>vs.<br><br>BDJ INVESTMENTS, LLC, *et al.*,<br><br>Defendants. | Case No.: 2:16-cv-00866-GMN-BNW<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 99), filed by Plaintiff U.S. Bank National Association ("U.S. Bank"). Defendant BDJ Investments, LLC ("BDJ") filed a Response, (ECF No. 110), and U.S. Bank filed a Reply, (ECF No. 116).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 101), filed by BDJ. U.S. Bank filed a Response, (ECF No. 112), to which BDJ did not file reply. The Court also ordered supplemental briefing on the Motions for Summary Judgement, which both U.S. Bank and BDJ filed. (Order on Mandate, ECF No. 142); (*See* ECF Nos. 145–146).

Also pending before the Court are BDJ's Motions to Strike and Exclude U.S. Bank's Supplemental Brief, (ECF Nos. 149–150). U.S. Bank filed Responses, (ECF Nos. 153–154), and BDJ filed a Reply, (ECF No. 155).

For the reasons discussed below, the Court **GRANTS** U.S. Bank's Motion for Summary Judgment, **DENIES** BDJ's Motion for Summary Judgment, and **DENIES** BDJ's Motions to Strike and Exclude.

1    I.    **BACKGROUND**

2       This case arises from the non-judicial foreclosure on real property located at 10625

3   Colter Bay Court, Las Vegas, Nevada 89129 (the "Property"). (*See* Deed of Trust, ECF No.

4   100-3).[1] In 2005, Isam S. Halteh ("Borrower") purchased the Property by way of a loan in the

5   amount of $255,400.00 secured by a deed of trust ("DOT"), identifying Mortgage Electronic

6   Registration Systems ("MERS") as beneficiary. (*Id.*). U.S. Bank later obtained an interest in

7   the Property through a series of assignments and is the current holder of the deed of trust. (*See*

8   Assignments of Deed of Trust, ECF Nos. 100-6, 100-7).

9       On December 3, 2009, upon Borrower's failure to pay all amounts due, Absolute

10   Collection Services, LLC ("ACS") recorded a notice of delinquent assessment lien on behalf of

11   Lone Mountain Quartette Community Association ("HOA"). (First Notice of Lien, ECF No.

12   100-8). ACS subsequently recorded a notice of default and election to sell, as well as a

13   notice of trustee's sale. (First Notice of Default, ECF No. 100-9); (First Notice of Sale, ECF

14   No. 100-10).

15       ACS reinitiated foreclosure proceedings in April 2011, recording a second notice of

16   delinquent assessment lien, followed by a notice of default. (Second Notice of Lien, ECF

17   No. 100-13); (Second Notice of Default, ECF No. 100-14). On September 19, 2011, Bank

18   of America, N.A. ("BANA"), U.S. Bank's loan servicer at the time, sent ACS a letter

19   through its agent Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer"), requesting a

20   statement of account for the Property. (*See* Accounting Request, Ex. 15 to Pl.'s Mot. Summ.

21   J. ("MSJ"), ECF No. 99-3). On September 29, 2011, Kelly Mitchell, ACS's owner and

22   collection manager, responded with a fax advising that a "9 month Statement of Account is

23

24      ———————————

25   [1] The Court grants Plaintiff's request for judicial notice, (ECF No. 100), as to the publicly recorded documents evidencing the foreclosure proceedings in this matter. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

not valid," until the deed of trust beneficiary forecloses on the Property. (ACS Response Letter, Ex. 16 to Pl.'s MSJ, ECF No. 99-4).

ACS, on HOA's behalf, proceeded with foreclosure, recording a renewed notice of trustee's sale and setting a sale date for January 17, 2012. (Second Notice of Sale, Ex. 17 to Pl.'s MSJ, ECF No. 99-5).  The foreclosure sale ultimately took place on April 17, 2012, at which Defendant BDJ acquired the Property and recorded a trustee's deed upon sale evidencing its purchase. (Foreclosure Deed, Ex. 18 to Pl.'s MSJ, ECF No. 99-6).

U.S. Bank filed its Amended Complaint in this action on April 22, 2019, bringing the following causes of action against BDJ and HOA arising from the foreclosure and subsequent sale of the Property: (1) quiet title with the requested remedy of declaratory relief; (2) injunctive relief; and (3) unjust enrichment. (*See* Am Compl. ¶¶ 54–86, ECF No. 95).  U.S. Bank and BDJ filed cross-motions for summary judgment on the quiet title claim. (*See generally* Pl.'s MSJ, ECF No. 99); (BDJ's MSJ, ECF No. 101).  On July 29, 2019, the Court ruled in favor of U.S. Bank, finding this case indistinguishable from *Bank of Am., N.A. v. Thomas Jessup, LLC Series VII (Jessup I)*, 435 P.3d 1217, 1220 (Nev. 2019), which held that the first deed of trust holder is excused from tendering the superpriority amount when the HOA's agent represents that any attempted tender would be rejected. (Order 7:1–8:5, ECF No. 118).  BDJ appealed this Court's Order. (Notice of Appeal, ECF No. 133).

While this case was on appeal, the Nevada Supreme Court reversed *Jessup I. See Bank of Am., N.A. v. Thomas Jessup, LLC Series VII (Jessup II),* 462 P.3d 255, 255 (Nev. 2020).  The Nevada Supreme Court also decided *7510 Perla DelMmar Avenue Trust v. Bank of Am., N.A. (Perla Del Mar)*, which introduced a higher standard for establishing futility of tender than *Jessup I*'s low threshold of simply providing evidence of an HOA agent's representation that any attempted tender would be rejected. *Perla Del Mar*, 458 P.3d 348, 349 (Nev. 2020) ("formal tender is excused when evidence shows that the party entitled to payment had a

known policy of rejecting such payments"). In light of these decisions, the Ninth Circuit vacated this Court's June 29, 2019 Order, and remanded with instructions to consider *Jessup II* and *Perla Del Mar*. (Memorandum of USCA, ECF No. 138).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set

1  forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*
2  *Celotex Corp.*, 477 U.S. at 324.

3      At summary judgment, a court's function is not to weigh the evidence and determine the
4  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
5  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn
6  in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is
7  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

8  **III.**  **DISCUSSION**

9      In its original Motion, U.S. Bank moved for summary judgment by relying on the
10  Nevada Supreme Court's ruling in *Jessup I*. (*See generally*, Pl.'s MSJ, ECF No. 99).  On
11  remand, U.S. Bank argues that its Motion should still be granted because BDJ had a known
12  practice to reject superpriority tenders. (Pl.'s Suppl. Brief 6:6–9:3, ECF No. 145).
13  Alternatively, U.S. Bank contends that the Property's grossly inadequate sales price, coupled
14  with other irregularities in the foreclosure process, constitute evidence of fraud, oppression, and
15  unfairness sufficient to warrant voiding the sale on equitable grounds. (Pl.'s MSJ 10:21–13:12).

16      BDJ seeks summary judgment on U.S. Bank's claims, arguing that U.S. Bank lacks
17  standing to bring a quiet title claim because U.S. Bank has not demonstrated a valid assignment
18  of the note and deed of trust in its favor. (BDJ's MSJ 8:3–11:21, ECF No. 101).  Additionally,
19  BDJ argues that the evidence presented by U.S. Bank cannot establish that BDJ had a known
20  policy of rejecting superpriority tender checks. (BDJ's Suppl. 2:12–3:27, 5:25–7:7, ECF No.
21  146).  BDJ further argues that BANA's obligation to tender the HOA superpriority lien was not
22  excused. (BDJ's MSJ 12:8–13:20).  Finally, BDJ asserts that the foreclosure sale is presumed
23  valid as a matter of law and, in any event, BDJ's status as a bona fide purchaser for value
24  precludes U.S. Bank from prevailing. (*Id.* 13:21–15:27).

25

The Court begins with the threshold issue of U.S. Bank's standing to bring this action, followed by discussion of whether BANA was obligated to tender the HOA superpriority lien amount.[2]

### A. Standing

BDJ argues that U.S. Bank does not have standing to assert its interest in the deed of trust because it has not adduced evidence of the reunification of the note and deed of trust. (BDJ's MSJ 8:5–21).  BDJ continues that U.S. Bank failed to provide a validly endorsed note, establish the chain of ownership of the note and first deed of trust, or present the original writing indicating the deed of trust was transferred. (Id. 8:5–11:8).  The Court disagrees.

To begin, it is well established that a quiet title action may be advanced by "any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). U.S. Bank seeks a declaration as to the viability of its lien interest relative to BDJ's interest. BDJ appears to conflate U.S. Bank's declaratory relief action with one for enforcement of the note and deed of trust through foreclosure. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249, 258 (Nev. 2012) ("[*T*]o *foreclose*, one must be able to enforce both the promissory note and the deed of trust.") (emphasis added).[3]  As to the chain-of-title argument, BDJ offers no competing evidence to rebut U.S. Bank's production of the deed of trust or the subsequent assignments by which U.S. Bank gained all beneficial interest in the same. (Deed of Trust, ECF No. 100-3); (Assignments of Deed of Trust, ECF Nos. 100-6, 100-7). Accordingly, the Court rejects BDJ's argument that U.S. Bank is without standing to bring the instant quiet title action.

---

[2] U.S. Bank already dismissed its unjust enrichment claim. (*See* Order, ECF No. 132).

[3] While not required, Plaintiff has nevertheless attached a copy of the original promissory note, (Ex. 1 to Pl.'s Resp., ECF No. 112-1).

### B.  Tender of the HOA Superpriority Lien

U.S. Bank argues that its DOT was preserved because it was excused from tendering the superpriority amount of HOA's lien on the Property, since tender would have been futile. (*See* Pl.'s Suppl. Brief 8:22–9:3).  To support this argument, U.S. Bank presents evidence of ACS's known policy of rejecting such tender payments.  For example, U.S. Bank provides the declaration of Miles Bauer attorney Rock Jung, trial testimony of ACS manager Kelly Mitchell, and evidence from other matters determining that ACS had a known policy of rejecting tenders. (*Id.* 6:6–9:3). [4]

---

[4] In its Motions to Strike under FRCP 12(f) or Exclude under FRCP 37(c), BDJ argues that (1) the Court should strike or exclude Rock Jung's declaration because it falsely states that no tender had ever been accepted by ACS; (2) the Court should strike or exclude Rock Jung's declaration and Kelly Mitchell's testimony because they were not disclosed as witnesses; (3) the Court should strike or exclude Exhibits D, E, F, G, and H because they were not disclosed during discovery; (4) the Court should strike all arguments based on the *Perla Del Mar* case because U.S. Bank did not preserve those arguments in its original Motion for Summary Judgment; and (5) the Court should strike U.S. Bank's Supplemental Brief because it exceeds 10 pages. (*See generally* Mot. Strike, ECF Nos. 149–150).

The Court is not persuaded by any of BDJ's arguments.  First, Rock Jung's declaration cannot be stricken under FRCP 12(f), and ACS provides no argument for why the declaration should be excluded under FRCP 37(c). *See Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, No. 2:12-CV-00560-MMD, 2014 WL 1305144, at *6 (D. Nev. Mar. 31, 2014) ("Motions to strike apply only to pleadings, and courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto.").  Further, the alleged falsehood in Jung's declaration was immaterial to the Court's decision in this matter, and thus is harmless. *See Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) ("The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless.").  Second, Rock Jung and Kelly Mitchell, as ACS's corporate designee, were both listed as witnesses in the initial disclosures. (*See* Pl.'s Second Suppl. Disclosures, Ex. 2 to U.S. Bank's Resp. to Mot. Strike, ECF No. 153-2).  Third, the Court did not rely on Exhibits D and E in its decision, and thus they are harmless non-disclosures.  Further, this Court has already decided that previously undisclosed exhibits of testimony in other similar HOA tender cases, such as Exhibits F–H, are harmless when, as here, the deposed witness was disclosed and the parties were on notice of the tender argument. *See Bank of N.Y. Mellon v. Meister Park Homeowners Ass'n*, No. 2:16-cv-01969-GMN-EJY, 2021 U.S. Dist. LEXIS 40431, at *25–27 (D. Nev. Mar. 2, 2021).  Fourth, the purpose of the Court-ordered supplemental briefing was to address *Perla Del Mar*, which created new law directly applicable to this case.  Therefore, the Court will not strike or exclude any arguments made by U.S. Bank in relation to the effect of *Perla Del Mar* on this case.  Finally, U.S. Bank did not exceed the 10-page limit on the brief by including exhibits.  The Court did not prohibit the parties from including exhibits in their supplemental briefing, and under the Local Rules, exhibits are generally excluded from page limits. *See* L.R. 7-3.  Accordingly, the Court denies BDJ's Motions to Strike or Exclude.

Under Nevada law, a DOT holder generally must tender the amount of a superpriority lien for the DOT holder to preserve its interest in the property prior to a superpriority foreclosure sale. *See Bank of Am., N.A. v. SFR Investments Pool 1, LLC*, 134 Nev. 604, 605, 427 P.3d 113, 116 (2018) (holding that "a first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust.").  However, an exception arises if the DOT holder can demonstrate that tender would have been futile because "evidence shows that the party entitled to payment had a known policy of rejecting such payments." *7510 Perla Del Mar Ave Tr. v. Bank of Am., N.A.*, 136 Nev. 62, 63, 458 P.3d 348, 350 (2020).

In the present case, U.S. Bank provides enough evidence to demonstrate that ACS had a known policy of rejecting superpriority tender payments.  First, following BANA's letter requesting the superpriority payoff amount, ACS responded in writing, stating:

> [I]t is our view that without the action of foreclosure, a 9 month Statement of account is not valid.  At this time, I respectfully request that you submit the Trustees Deed Upon Sale showing your client's possession of the property and the date that it occurred.  At that time, we will provide a 9 month super priority lien Statement of account.

(ACS Response Letter, Ex. L to BDJ's MSJ, ECF No. 101).  This response indicates that ACS would not accept tender of the HOA's superpriority amount, but instead would only accept tender of the full lien amount. *See Jessup I*, 435 P.3d at 1220.

While *Jessup II* makes clear that a response like ACS's would not be enough evidence to establish futility on its own, additional evidence confirms that ACS had a known policy of rejecting superpriority tenders during 2011 and 2012. *See* 462 P.3d at 255.  Rock Jung's declaration illustrates that Miles Bauer sent hundreds of similar requests for superpriority payoff amounts to ACS in other HOA foreclosure cases, and that ACS provided the same response to all of them. (Jung Decl. ¶ 7, ECF No. 145).  For this reason, Rock Jung explains that he

believed that ACS had a policy of rejecting any superpriority tender from BANA, or anther DOT holder, until BANA foreclosed on the Property. (*Id.* ¶ 9).  Further, Kelly Mitchell's deposition testimony from various other HOA foreclosure cases, during the appropriate time frame, demonstrates that ACS would reject any payment for an amount less than the entire amount of the HOA lien that notated "paid in full," as was BANA's practice.[5] (*See* Mitchell Dep. 13:23–14:4, Ex. F to Pl.'s Suppl. Brief, ECF No. 145-6). (*See also* Mitchell Deps., Exs. G–H, ECF Nos. 145-7–145-8).  Finally, U.S. Bank cites to many similar HOA foreclosure cases during the same time period where courts found that ACS had a policy of rejecting tender of the superpriority lien amount. *See, e.g.*, *Nationstar Mortg. LLC v. Falls at Hidden Canyon Homeowners Ass'n*, No. 2:15-cv-01287-RCJ-NJK, 2021 WL832637 (D. Nev. Mar. 4, 2021); *HSBC Bank US v. Green Valley Pecos Homeowners Ass'n*, No. 2:16-cv-242 JCM, 2021 WL 1080735 (D. Nev. Mar. 19, 2021).

Accordingly, the Court finds that U.S. Bank established that ACS had a policy of rejecting superpriority tenders, and under *Perla Del Mar*, U.S. Bank was excused from tendering the superpriority amount to the HOA based on futility.  Thus, the Court finds that U.S. Bank's DOT was not extinguished by the HOA's foreclosure sale and grants summary judgment in favor of U.S. Bank.

## IV.     <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff U.S. Bank's Motion for Summary Judgment, (ECF No. 99), is **GRANTED**.

---

[5] The fact that ACS may have accepted tender without conditional language such as "paid in full" is irrelevant. *See Bank of Am., N.A. v. Alessi & Koenig*, 840 App'x 217, 218 (9th Cir. 2021) (holding that the existence of a policy to only reject tenders with conditional "restrictive language" was sufficient to excuse a tender, because such restrictions were appropriate).  ACS's practice of rejecting checks with "paid in full" language is evidence of futility of tender.

1     **IT IS FURTHER ORDERED** that Defendant BDJ's Motion for Summary Judgment,

2   (ECF No. 101), is **DENIED**.

3     **IT IS FURTHER ORDERED** that Defendant BDJ's Motions to Strike and Exclude,

4   (ECF Nos. 149–150), are **DENIED**.

5     The Clerk of Court is instructed to close this case.

6     **DATED** this __17__ day of September, 2021.

7

8     _____

9     Gloria M. Navarro, District Judge
      UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25